Sur application for instructions to the marshal in the execution of a writ of fi. fa. A writ of fi. fa., directed to the marshal of the Western district, had issued from the circuit court of the United States for the Western district of Pennsylvania, upon a judgment in the plaintiff's favor obtained in that court. Under this execution, property in that district had been levied upon, and the same writ was then handed to the marshal of the Eastern district, with directions that he should seize under it property in the last named district. The marshal applied to the court at chambers, for instructions, alleging that under the act of congress he was not instructed as to whether he had authority to levy under the writ directed to the marshal of the Western district, or whether an independent writ (either concurrent or subsequent) issued from the Western district, and directed to himself, was necessary.

A. Sydney Biddle, argued that the language of the act was plain. Section 985, p. 184, of the Revised Statutes [4 Stat. 184], provides that "all writs of execution upon judgments or decrees obtained in a circuit or district court, in any state which is divided into two or more districts, may run and be executed in any part of such state; but shall be issued from, and made returnable to, the court wherein the judgment was obtained."

McKENNAN, Circuit Judge. The language of the statute is plain: "All writs of execution" are to run and be executed all over the state, where it consists of more than one district. "May" means at the plaintiff's option. He has a right to concurrent execution all over the state. It is impossible to give the words of the statute effect unless every writ is allowed to run in all the districts in the same state. The formal direction to one marshal is of no consequence, since the same act of congress which enlarges the territorial power of the writ enlarges the direction correspondingly.

[See note to Case No. 11,404.]

## Case No. 11,403.

### PREVOST v. GORRELL.

[3 Wkly. Notes Cas. 548; 24 Pittsb. Leg. J. 143.]

Circuit Court, E. D. Pennsylvania. April 7, 1877.

TRANSFER OF CAUSE FOR TRIAL — CONVENIENCE OF PARTY AND WITNESSES—INSUFFICIENT GROUNDS FOR REMOVAL.

Petition by defendant to remove cause from Pittsburgh, in the Western district of Pennsylvania, to Williamsport, in the same district.

The petition set forth that the suit was case for damages done to the plaintiff's colliery in Columbia county; that this suit was brought for the same cause of action as in the case of Prevost v. Gorrell, originally brought in common pleas No. 2 of Philadelphia county (reported in 2 Wkly. Notes Cas. 440), the latter action having been held by the supreme court of Pennsylvania to have been a local action, and therefore wrongly brought in the common pleas of Philadelphia county (reported 3 Wkly. Notes Cas. 366); that the trial of said cause had occupied several weeks, and that this would probably occupy an equal time; that the witnesses resided in Columbia county, and that it would be burdensome to the defendant and to his witnesses to take them to Pittsburgh, when the case might as readily be tried in Williamsport, which was more than a hundred miles nearer the residence of all parties interested.

H. M. Shick, for the petition.
A. Sydney Biddle, contra.

McKENNAN, Circuit Judge. Without the consent of both sides, I will not order a cause to be removed from where it had been brought unless for some extraordinary reason. Petition refused.

[See note to Case No. 11,404.]

## Case No. 11,404.

### PREVOST v. GORRELL.

[5 Wkly. Notes Cas. 149.]

Circuit Court, E. D. Pennsylvania. Aug. 18, 1877.

DRAINAGE OF MINES — ADJACENT COLLIERIES — DRAINAGE FROM ONE MINE TO ANOTHER —EASEMENTS—MEASURE OF DAMAGES.

[1. Where two adjacent coal mines were held under lease, and water flowed from one into the other through an opening wrongfully made by a prior lessee of the latter, held that the lessee of the former was nevertheless liable for damages resulting from the flow of all water escaping by reason of unskillful mining; from overflow from accumulations, due to insufficient pumping capacity; from overflow of water artificially conveyed from one part of the mine to another, and then permitted to escape; and for overflow of surface water entering the mine because of badly constructed surface ditches.]

[2. Under such circumstances it was the duty of defendant to provide pumping capacity sufficient to prevent the overflow from his mine, not only of the ordinary and usual drainage, but also the flow occasioned by heavy and continued rains and melting snow, which by their well-understood periodical occurrence might be anticipated.]

[3. The fact that a mine has been trespassed upon by a previous lessee of a subjacent mine who took away the wall between them, does not justify the owner of the upper mine in discharging water through the opening, if by reasonable means he can discharge it from his own mine in some other way.]

[4. The lessee of a subjacent mine cannot complain of the mere natural flow from an upper mine through an opening wrongfully made by a previous lessee of the lower mine. But the owner of the upper mine cannot conduct his operations in entire disregard of the effect of his mode of operation upon the lower mine, and he is bound to provide appropriate and reasona-